UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------X

PETER MARGARITIS as Administrator of the
Estate of Lisa Margaritis, deceased,

                      Plaintiff,              **MEMORANDUM &
ORDER**

            - against -             **20-CV-3995 (GRB)(JMW)**

LAURA MAYO, THE GIVING ROOM LLC,
PECONIC WATER SPORTS LLC, GOLDSMITH'S
BOAT SHOP INC.,

                   Defendants.

----------------------------------------------------------------X

PETER MARGARITIS as Administrator of the
Estate of Lisa Margaritis, deceased,

                   Plaintiff,

            - against -             20-CV-5493 (GRB)(SIL)

PECONIC JET SKI LLC,

                  Defendant.

----------------------------------------------------------------X

In the Matter of the Complaint of Peconic Jet Ski,    20-CV-5589 (GRB)(JMW)
LLC

----------------------------------------------------------------X

**GARY R. BROWN, United States District Judge:**

      In these actions, plaintiff/claimant Peter Margaritis ("plaintiff"), acting as administrator of

the estate of his late wife, Lisa Margaritis, brings claims for negligence and wrongful death arising

from the tragic drowning death of Mrs. Margaritis while en route to a "Stand Up Paddle Yoga" class offered by defendants. Before the Court is plaintiff's motion to remand the consolidated actions pursuant to 28 U.S.C. § 1447. For the reasons set forth below, plaintiff's motion is GRANTED.

## I.      Factual & Procedural Background

The factual background, as alleged in plaintiff's complaint ("Compl."), Docket Entry ("DE") 1-1,[1] is as follows:

As of August 2019, defendants The Giving Room LLC, Goldsmith's Boat Shop Inc., Peconic Water Sports LLC, and Peconic Jet Ski LLC[2] (collectively, the "corporate defendants"), via some form of joint venture, were offered classes marketed as "Stand Up Paddle Yoga." These classes entailed supplying attendees with stand-up paddleboards, launching from the joint venture's boathouse in Southold, NY, and leading the group into open water, whereupon participants would be taught yoga poses executed on the paddle boards. On the morning of August 2, 2019, defendant Laura Mayo (together with the corporate defendants, "defendants"), an employee of the corporate defendants, conducted such a class in which the late Mrs. Margaritis participated. After setting off from the boathouse, Mrs. Margaritis was seriously injured, resulting in her untimely death. Although the details are not made clear in the complaint, defendant Peconic Water Sports LLC's opposition to the present motion asserts that the incident occurred on "the return voyage" following the class: apparently, Mrs. Margaritis attempted to assist a classmate with transiting under a bridge and, tragically, drowned in the course of the attempt. *See* Opposition ("Opp."), DE 34.

---

[1] All references to docket entries are to the docket in case no. 20-CV-3995 unless stated otherwise.
[2] Defendant Peconic Jet Ski LLC is named solely in the complaint filed in case no. 20-CV-5493, which raises essentially identical allegations.

On July 14, 2020, plaintiff filed an action against all of the defendants save for Peconic Jet Ski LLC in Suffolk County Supreme Court; defendant Peconic Water Sports LLC then removed that action to this Court on August 27, 2020 (filed as case no. 20-CV-3995).  Plaintiff subsequently filed an action raising essentially identical allegations against defendant Peconic Jet Ski LLC on October 29, 2020, which was itself removed on November 12, 2020 (filed as case no. 20-CV-5493).  Shortly thereafter, Peconic Jet Ski LLC filed a limitation of liability action (case no. 20-CV-5589) in this Court pursuant to 46 U.S.C. § 30501 *et seq.*  Peconic Water Sports LLC and Peconic Jet Ski LLC then moved, in their respective cases, to consolidate all three cases.

A briefing schedule was issued on plaintiff's motion to remand the first removed action at a pre-motion conference held before the undersigned on October 20, 2020.  In January of 2021, Peconic Jet Ski LLC filed a letter agreeing to be bound by the pending motion to remand in the second removed action given that the cases involve identical issues.  Subsequently, on May 25, 2021, this Court entered an order in the first removed action directing defendant Peconic Water Sports LLC, in light of its failure to do so in its notice of removal, to file proof either of the consent of the other defendants to the removal or of the lack of service upon the non-consenting defendants. Peconic Water Sports LLC filed its response to this order on June 11, 2021.  By this order, the Court hereby grants Peconic defendants' respective outstanding motions and consolidates these three cases into the first-filed case, no. 20-CV-3995.

This opinion follows.

## I.     Discussion

"A party seeking removal bears the burden of showing that federal jurisdiction is proper." *Montefiore Med. Ctr. v. Teamsters Loc. 272*, 642 F.3d 321, 327 (2d Cir. 2011) (citation omitted). The Peconic defendants rely exclusively upon the Court's admiralty jurisdiction under 28 U.S.C.

§ 1333 as the sole basis for removal.  Plaintiff contends that admiralty jurisdiction cannot serve as a proper basis for removal.  *See* Motion to Remand ("Mot."), DE 33.  Following the submission of the fully-briefed motion, as indicated above, this Court identified *sua sponte* separate issues with Peconic Water Sports LLC's notice of removal, to wit: an apparent failure to establish consent of all defendants to the removal.  These issues are addressed separately.

### A.    *Admiralty Jurisdiction as a Basis for Removal*

Under 28 U.S.C. § 1333, district courts "have original jurisdiction, exclusive of the courts of the States, of: (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled."  Thus, federal courts have original jurisdiction over admiralty and maritime cases, subject only to this "saving to suitors" clause, which has been the subject of intensive discussion in the courts.  *See, e.g.*, *Nassau Cty. Bridge Auth. v. Olsen*, 130 F. Supp. 3d 753, 763 (E.D.N.Y. 2015) (collecting cases).  As effectively summarized by Judge Spatt in *Nassau County Bridge Auth.*:

> Prior to the enactment of the First Judiciary Act, the predecessor to 28 U.S.C. § 1333, some common law remedies in admiralty cases were administered by state courts. *See Romero v. Int'l Terminal Operating Co.,* 358 U.S. 354, 362, 79 S.Ct. 468, 475, 3 L.Ed.2d 368 (1959) ("[S]ome remedies in matters maritime had been traditionally administered by common-law courts of the original States."). While the First Judiciary Act granted federal courts original jurisdiction over admiralty cases, the "saving to suitors" clause has been interpreted by the Supreme Court as a means of preserving the role of state courts in administering common law remedies, such as a jury trial, in admiralty cases. *See, e.g., Lewis v. Lewis & Clark Marine, Inc.,* 531 U.S. 438, 444, 121 S.Ct. 993, 999, 148 L.Ed.2d 931 (2001) ("Thus, the saving to suitors clause preserves remedies and the concurrent jurisdiction of state courts over some admiralty and maritime claims."); *New Jersey Steam Nav. Co. v. Merchant's Bank of Boston,* 47 U.S. 344, 390, 6 How. 344, 12 L.Ed. 465 (1848) ("The saving clause was inserted, probably, from abundant caution, lest the exclusive terms in which the power is conferred on the District Courts might be deemed to have taken away the concurrent remedy which had before existed.").

The "saving to suitors" clause of § 1333 is in tension with the removal statute, 28

U.S.C. § 1441. That is because, as noted above, the "saving to suitors" clause was intended to preserve the historic role of state courts in administering common law remedies in admiralty cases. Thus, if a court were to interpret § 1441 to permit removal of all admiralty cases, it would threaten the vitality of the "saving to suitors" clause by taking common law admiralty cases that had been traditionally administered in state court and placing them in federal court.

In order to reconcile this potential conflict with the "saving to suitors" clause, the Supreme Court and the Second Circuit have interpreted § 1441 as only permitting removal of common law admiralty claims where there is a separate basis of federal jurisdiction, such as diversity of citizenship.

*Id.* at 759–60. Thus, under the generally accepted understanding of the "saving to suitors" clause, admiralty and maritime cases filed in state court are not removable by virtue of district courts' admiralty jurisdiction; rather, such cases require an independent basis for federal jurisdiction, *i.e.*, diversity or federal question jurisdiction. *See id.* at 762-63. Defendants raise a series of ultimately meritless arguments contesting this rule.

First, defendants contend that the plain language of the removal statute allows for removal notwithstanding the "saving to suitors" clause. The removal statute reads, in relevant part, as follows:

Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a). Defendants cite a bevy of dictionaries and authorities setting forth principles of statutory interpretation, ultimately concluding that (a) "any civil action . . . of which the district courts . . . have original jurisdiction" encompasses "[a]ny civil case of admiralty or maritime jurisdiction" within district courts' original jurisdiction under 28 U.S.C. § 1333, and (b) the "saving to suitors" clause "cannot serve as an 'express' prohibition against removal." Opp., DE 34 at 4-6. Ultimately, defendants' argument is predicated on the definition of the word "remedies"

in the "saving to suitors" clause.  Defendants contend that the "remedies" preserved by the clause

cannot, by definition, include the plaintiff's choice of forum, preventing the clause from acting as

an "expressly provided" exception to the removal statute.  Though interesting, defendants cite no

binding precedent to support this argument, nor can they, as the Supreme Court has explicitly held

that the clause *does* preserve the right to a state forum:

> The 'right of a common law remedy,' so saved to suitors, does not ... include
> attempted changes by the States in the substantive admiralty law, but it does include
> all means other than proceedings in admiralty which may be employed to enforce
> the right or to redress the injury involved. *It includes remedies* in pais*, as well as
> proceedings in court*; judicial remedies conferred by statute, as well as those
> existing at the common law; remedies in equity, as well as those enforceable in a
> court of law. *Thus, the saving to suitors clause preserves remedies and the
> concurrent jurisdiction of state courts over some admiralty and maritime claims.*

*Lewis*, 531 U.S. at 445 (emphasis added) (rejecting lower court's conclusion "that forum choice

could not be a saved remedy under the saving to suitors clause," *id.* at 455).  The Second Circuit

has echoed this sentiment, finding that the clause "preserves a plaintiff's right to a state court forum

in cases arising under the common law of the sea." *Pierpoint v. Barnes*, 94 F.3d 813, 816 (2d Cir.

1996).  Indeed, this conclusion appears to be obvious in light of the Supreme Court's holding that

"a remedy is the means employed to enforce a right or redress an injury."  *Lewis*, 51 U.S. at 445

(citation omitted).   Moreover, defendants ultimately undermine their own argument: at the

conclusion of defendants' brief, they observe that, if this Court were to exercise its admiralty

jurisdiction over plaintiff's claims, "plaintiff [would] not have an absolute right to trial by jury"

under the Federal Rules of Civil Procedure.  Opp., DE 34 at 20; *see* F.R.Civ.P. 38(e) ("These rules

do not create a right to a jury trial on issues in a claim that is an admiralty or maritime claim under

Rule 9(h).").  Yet "[t]rial by jury is an obvious, but not exclusive, example of the remedies

available to suitors." *Lewis*, 531 U.S. at 454–55.  As a result, by defendants' own admission,

permitting removal in this case on the basis of the Court's admiralty jurisdiction would,

indisputably, withhold a remedy "saved to suitors."[3]

Defendants then raise two thematically conflicting arguments: positing on the one hand that if Congress intended to prohibit the removal of admiralty cases, they would have done so explicitly; and on the other hand, urging the Court to find that Congress implicitly provided for the removal of admiralty cases with the 1966 merger of the Admiralty Rules with the Federal Rules of Civil Procedure and/or the 2011 amendment to the removal statute. Opp., DE 34, at 7-11, 14-17. Logical inconsistencies aside, defendants miss the mark: the proper framing is, instead, that if Congress intended to *enable* the removal of admiralty cases, they would have done so explicitly. As the Supreme Court held in *Romero*, the principle that maritime plaintiffs had the right to select their forum was, even in 1959, "long-established and . . . deeply rooted," 358 U.S. at 372, indicating that the default practice was to *bar*, rather than *permit*, removal. The *Romero* Court addressed a nearly identical argument – contending that the Judiciary Act of 1875 implicitly provided district courts general jurisdiction over cases in admiralty – and in rejecting this reasoning, set out with particularity the historical significance of shared jurisdiction between state and federal courts over admiralty matters. *Id.* at 359-72, 379-80. With this context in mind, the Court raised concerns which read as if directed to defendants' proposed interpretation presently before this Court:

> Important difficulties of judicial policy would flow from such an interpretation, an interpretation which would have a disruptive effect on the traditional allocation of power over maritime affairs in our federal system.
>
> Thus the historic option of a maritime suitor pursuing a common-law remedy to select his forum, state or federal, would be taken away . . . since saving-clause actions would then be freely removable under s 1441 of Title 28, 28 U.S.C.A. s 1441. The interpretation . . . contended for would have consequences more deeply felt than the elimination of a suitor's traditional choice of forum. By making

---

[3] Defendants contest this conclusion by claiming that the remedy of a trial by jury is retained under F.R.Civ.P. 39(c)(2), under which a court "may, with the parties' consent, try any issue by a jury . . . ." But it is patently obvious that a remedy is not preserved when it is made subject to the opposing party's consent.

> maritime cases removable to the federal courts it would make considerable inroads into the traditionally exercised concurrent jurisdiction of the state courts in admiralty matters—a jurisdiction which it was the unquestioned aim of the saving clause of 1789 to preserve.

*Id.* at 371-72.  Given such far-reaching implications for comity and federalism, and the well-established history of this shared jurisdiction, it is difficult to believe that Congress – particularly with the benefit of this detailed treatment of such issues in *Romero* – would have enacted such a fundamental change to this well-established limit on removal jurisdiction without clearly stating such a purpose.  *See Whitman v. Am. Trucking Associations*, 531 U.S. 457, 468 (2001) ("Congress . . . does not, one might say, hide elephants in mouseholes."); *Finley v. United States*, 490 U.S. 545, 554 (1989) ("Under established canons of statutory construction, 'it will not be inferred that Congress, in revising and consolidating the laws, intended to change their effect unless such intention is clearly expressed.'" (citations omitted)); *cf. Keene Corp. v. United States*, 508 U.S. 200, 209 (1993) ("Although Keene urges us to see significance in the deletion of the 'file or prosecute' language in favor of the current reference to 'jurisdiction' in the comprehensive revision of the Judicial Code completed in 1948, we do not presume that the revision worked a change in the underlying substantive law 'unless an intent to make such [a] chang[e] is clearly expressed.'" (citations omitted)).  This conclusion becomes all the more compelling when taking into account "the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments," whereby "federal courts construe the removal statute narrowly, resolving any doubts against removability."  *Somlyo v. J. Lu–Rob Enters., Inc.*, 932 F.2d 1043, 1045–46 (2d Cir.1991); *see also Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941) ("Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined." (citations omitted)).  Once again, defendants point to no

authority suggesting that Congress had such a purpose when enacting either the 1966 merger or the 2011 amendment.

Finally, defendants contend that the language addressed to removal in *Romero* was merely *dicta*, and is therefore (along with subsequent cases adopting its reasoning) not to be followed. Opp., DE 34, at 12-14.  To be sure, the Supreme Court in *Romero* was not addressing a removal challenge.  Yet it is well understood that *dicta* – particularly the type of detailed analysis set forth in *Romero* – even while not controlling, can provide meaningful substantive guidance.  Defendants also completely fail to acknowledge subsequent cases reaffirming the principles set forth in *Romero*.  For example, the Supreme Court in *Lewis* addressed the propriety of an injunction entered against the prosecution of a plaintiff's action filed in state court.  *Lewis*, 531 U.S. at 440-43.  The plaintiff, a deckhand employed and injured aboard the defendant's vessel, had filed claims in state court; anticipating the action, the vessel owner had filed a limitation of liability action in federal court, pursuant to which the district court entered a restraining order enjoining the prosecution of the state court action.  *Id.* at 440-41.  However, the district court subsequently dissolved the restraining order in light of the joint jurisdiction conferred by the "saving to suitors" clause.  *Id.* at 442.  On review, the Supreme Court affirmed the dissolution, acknowledging "the consistent recognition by Congress and this Court that both state and federal courts may be proper forums for adjudicating [maritime] claims[.]"  *Id.* at 455.  While *Lewis* was not addressed to removal *specifically*, the effect of removal is identical to the effect of the injunction that was struck down in *Lewis*: *i.e.*, the abrogation of a plaintiff's right to select his forum in maritime cases. Regardless, as set out above, the statutory language clearly establishes – particularly in light of longstanding practice – that admiralty jurisdiction, standing alone, does not provide grounds for removal; cases like *Romero* and *Pierpoint* only reinforce that conclusion.

B.      *Procedural Requirements for Removal*

The exercise of jurisdiction by district courts over cases removed from state court is subject to a panoply of substantive and procedural requirements.  Procedurally, removal is subject to various timing requirements: on the front end, the notice of removal must be filed in federal court "within 30 days after the receipt by the defendant . . . of a copy of the initial pleading," or if a pleading is not required to be served, "within 30 days after the service of summons upon the defendant," subject to the limitation that if the initial pleading does not indicate the case is removable, a notice of removal may be filed within thirty days after receipt of some paper "from which it may first be ascertained that the case is one which is or has become removable."  28 U.S.C. § 1446(b).  Cases removed on the basis of diversity jurisdiction "may not be removed . . . more than 1 year after commencement of the action," unless the plaintiff has acted in bad faith in order to prevent removal.  *Id.* § 1446(c).  The defendant must then "[p]romptly" provide written notice of the removal to all adverse parties and file a copy of such notice on the state court docket. *Id.* § 1446(d).  Furthermore, cases otherwise removable on the basis of diversity jurisdiction "may not be removed" if any properly joined defendant "is a citizen of the State in which such action is brought."  28 U.S.C. § 1441(b).

Defendants seeking to remove a state court action are also subject to certain affirmative obligations.  Specifically, a defendant pursuing removal must be joined by, or obtain the consent of, all other defendants "who have been properly joined and served" within the 30-day period set out above.  28 U.S.C. § 1446(b)(2); *see Amparo v. City of Yonkers*, No. 21-CV-02672 (PMH), 2021 WL 2313468, at *1 (S.D.N.Y. May 10, 2021) ("If fewer than all defendants sign the notice of removal, the strict unanimity rule permits removal only if '*all defendants* consent to removal within the statutory thirty-day period.'" (citation omitted)).  Furthermore, a removing defendant

must affirmatively set forth "a short and plain statement of the grounds for removal."  28 U.S.C. § 1446(a).  "Where the notice fails to state a proper basis for removal, a defendant generally will not be permitted to amend the notice after the close of the thirty day removal period."  *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 205 (2d Cir. 2001) (citing *Lupo v. Human Affairs Int'l Inc.*, 28 F.3d 269, 274 (2d Cir.1994)).  "[T]he party who seeks the exercise of jurisdiction in his favor . . . must allege in his pleading the facts essential to show jurisdiction. If he fails to make the necessary allegations he has no standing."  *Lupo*, 28 F.3d at 273 (citation omitted).  Therefore, if a notice of removal fails to set forth certain grounds for removal – even if those grounds are present in the case – a defendant cannot later rely on those grounds in arguing for the exercise of jurisdiction by a federal court.  *See id.* at 274 (finding that, where defendant "failed . . . [to] even raise the issue of diversity jurisdiction," the court "lack[ed] subject matter jurisdiction").

Finally, motions to remand "on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)."  28 U.S.C. § 1447(c).

As set forth above, plaintiff's claims were not removable on the basis of admiralty jurisdiction – the sole ground set forth in the Peconic defendants' notices of removal. Nevertheless, even assuming admiralty jurisdiction *did* provide a proper basis for removal, defendants' failure to comply with certain of the statutory prerequisites to removal provides an independent basis for remand.[4]   An examination of the docket conducted while reviewing plaintiff's motion revealed that defendant Peconic Water Sports LLC had failed to affirmatively

---

[4] It is worth noting that the question regarding admiralty jurisdiction is the sole basis for remand raised in plaintiff's motion.  The statute does not make clear whether a court is limited to reviewing only those grounds raised in the motion to remand, and this Court's review has not revealed any case law shedding light on the issue.  However, given that "[a] party seeking removal bears the burden of showing that federal jurisdiction is proper," *Montefiore Med. Ctr.*, 642 F.3d at 327, the undersigned finds it appropriate to subject defendants' notices of removal to an exacting review not limited to grounds raised by plaintiff.

set forth that they had obtained the consent of all properly served defendants when filing their notice of removal.  Accordingly, as noted above, the Court entered an order on May 25, 2021, directing Peconic Water Sports LLC "to file proof with the Court by May 28, 2021 either that (a) consent was obtained from the other defendants prior to the removal of this case on August 27, 2020 or (b) the other defendants to this action had not been properly joined and served in the removed state court action prior to the removal of this case."  Order of May 25, 2021.  On June 11, 2021, Peconic Water Sports LLC filed their response, conceding that they "had obtained authority from all defendants except The Giving Room LLC prior to effectuating removal."  DE 39.

The failure to obtain consent from defendant The Giving Room LLC requires that the case be remanded.  The "rule of unanimity" in obtaining consents from fellow defendants "is 'strictly interpreted and enforced.' If it is not satisfied, then 'the petition is defective and the case must be remanded.' The rule of unanimity 'advances the congressional purpose of giving deference to a plaintiff's choice of a state forum and of resolving doubts against removal in favor of remand.'" *Percy v. Oriska Gen. Contracting*, No. 20-CV-6131 (NGG), 2021 WL 2184895, at *6 (E.D.N.Y. May 27, 2021) (citations omitted).  Although defendant Peconic Water Sports LLC qualifies this omission by asserting that "[a]ll defendants filed an Answer without raising an objection" to the removal," DE 39, silence does not constitute consent under the removal statute.  Rather, "each of the non-removing defendants must independently express their consent to removal."  *Amparo*, 2021 WL 2313468, at *1.  "It is well established in this Circuit that it is not sufficient for a non-removing defendant 'to merely advise the removing defendant that it consents to removal and that the removing defendant may represent such consent to the Court on its behalf.'"  *Id.* (citations omitted).

There are certain limited "exceptions to this rule for defendants who have not been served, unknown defendants, and fraudulently joined defendants." *Sherman v. A.J. Pegno Constr. Corp.*, 528 F. Supp. 2d 320, 330 (S.D.N.Y. 2007); *cf. Gov't Emps. Ins. Co. v. Saco*, No. 12-CV-5633 NGG MDG, 2015 WL 4656512, at *5 n.8 (E.D.N.Y. Aug. 5, 2015) (upholding removal where non-consenting defendants were fraudulently joined).  However, none of these exceptions apply here.   Accordingly,   remand   is   also   warranted   for   defendants'   failure   to   comply   with   the requirements of the removal statutes.

C.      *The Limitation of Liability Action*

Although these cases were consolidated into the first removed action, it is within this Court's discretion to sever the limitation of liability action and only remand the two cases originally filed in state court.  However, out of concern for the principles of comity and judicial economy, the undersigned declines to do so.  As the Supreme Court has held:

> The district courts have jurisdiction over actions arising under the Limitation Act, and they have discretion to stay or dismiss Limitation Act proceedings to allow a suitor to pursue his claims in state court. If the district court concludes that the vessel owner's right to limitation will not be adequately protected—where for example a group of claimants cannot agree on appropriate stipulations or there is uncertainty concerning the adequacy of the fund or the number of claims—the court may proceed to adjudicate the merits, deciding the issues of liability and limitation. But where, as here, the District Court satisfies itself that a vessel owner's right to seek limitation will be protected, the decision to dissolve the injunction is well within the court's discretion.

*Lewis*, 531 U.S. at 454 (citation omitted).  In this instance, the undersigned finds that the New York Supreme Court is "competent to entertain a claim of the shipowner for a limitation of liability and afford him appropriate relief under the statute dealing with that subject." *Langnes v. Green*, 282 U.S. 531, 540 (1931).  Furthermore, it would be far more reasonable for these matters to be addressed by the same court, rather than to be split between federal and state adjudications: doing

so is in the interest not only of judicial economy, but also the rights of the parties.  *See id.* ("To retain the cause would be to preserve the right of the shipowner [to a limitation defense], but to destroy the right of the suitor in the state court to a commonlaw remedy; to remit the cause to the state court would be to preserve the rights of both parties. The mere statement of these diverse results is sufficient to demonstrate the justice of the latter course . . . ."); *cf.* Fed. R. Civ. P. 1 (requiring construction of the rules to secure "the just, speedy, and inexpensive determination of every action and proceeding").  Accordingly, all three cases are remanded as a consolidated action.

### III. Conclusion

For the reasons set forth above, the consolidated actions are hereby REMANDED to the New York Supreme Court, County of Suffolk and the cases are DISMISSED in their entirety.  The Clerk of the Court is directed to enter judgment consistent with this Order.

**SO ORDERED.**

Dated: Central Islip, New York
            August 6, 2021

/s/ Gary R. Brown
GARY R. BROWN
United States District Judge